FILED
2020 Jul-31 PM 01:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| **WILLIAM JOSEPH CHAMBERS,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**ANDREW M. SAUL, Commissioner of the Social Security Administration,**<br><br>**Defendant.** | Civil Action Number<br>**6:19-cv-00679-AKK** |

## MEMORANDUM OPINION

William Joseph Chambers brings this action pursuant to Section 405(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). Chambers asserts that the Administrative Law Judge ("ALJ") improperly relied on res judicata to limit the alleged onset date of his disability and that he had ineffective assistance of counsel before the ALJ. After careful review, this court finds that the ALJ applied the correct legal standards and that her decision, which has become the final decision of the Commissioner, is supported by substantial evidence. Furthermore, this court finds that the ALJ properly limited the alleged onset date to April 24, 2010, and that Chambers' claim of ineffective assistance of counsel fails. Therefore, the decision denying benefits is due to be affirmed.

**I.**

Chambers filed a prior application for benefits, which resulted in an unfavorable decision that Chambers did not appeal. R. 47. Chambers filed the current application for a period of disability and disability insurance benefits on August 3, 2017, alleging a disability beginning October 6, 2005, due to severe impairments from depression and anxiety-related disorders. R. 10, 12. Chambers later amended his alleged onset date to April 24, 2010, with his date last insured being December 31, 2011. R. 10, 345. The SSA denied Chambers' claim, and Chambers requested a formal hearing. R. 10. After two hearings, the ALJ issued a decision denying Chambers' claim. R. 18. Subsequently, the Appeals Council denied Chambers' request for review, rendering the ALJ's opinion the final decision of the Commissioner. R. 1. Chambers, proceeding *pro se*, now seeks review in this court. Doc. 8.

**II.**

The issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by

'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "'[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against those findings. *See id.* While judicial review of the ALJ's findings is limited in scope, it "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

In contrast to the deferential review accorded the Commissioner's factual findings, "conclusions of law, including applicable review standards, are not presumed valid" and are subject to de novo review. *Martin*, 894 F.2d at 1529. The Commissioner's failure to "apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed" requires reversal. *Id.*

3

**III.**

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(1). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the ALJ must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*See McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* (citing 20 C.F.R.

§ 416.920(a)-(f)). "Once [a] finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). However, the claimant ultimately bears the burden of proving that he is disabled, and, "consequently he is responsible for producing evidence in support of his claim." *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.945(a), (c)).

## IV.

In performing the five-step analysis, the ALJ first determined that Chambers satisfies Step One because he had not engaged in any substantial gainful activity since his alleged onset date. R. 12. Next, the ALJ found that Chambers met the requirements of Step Two because he had the severe impairments of bipolar disorder, depressive disorder, and generalized anxiety disorder. *Id.* The ALJ then proceeded to Step Three, finding that Chambers did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 13 (internal citations omitted). At this step, the ALJ specifically considered listings 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders), and found that Chambers did not satisfy the "paragraph B" criteria for the listings because Chambers has "no more than moderate mental limitation of functioning during the period at issue." R. 14.

The ALJ then concluded that, from April 24, 2010 through the date last insured, Chambers had the residual functional capacity ("RFC") to "perform medium work . . . except he can have occasional interaction and cooperation with co-workers and supervisors but none with the general public." R. 15. The ALJ found that Chambers could "maintain concentration, persistence, or pace to complete work in two-hour intervals for an eight-hour day for unskilled work." *Id.*

Based on this RFC, and relying on the testimony of a vocational expert ("VE"), the ALJ concluded at Step Four that Chambers could not have performed any of his past relevant work through the date last insured. R. 17. The ALJ then proceeded to Step Five, where based on Chambers' age, education, work experience, RFC, and the VE's testimony, the ALJ determined that "jobs existed in significant numbers in the national economy that [Chambers] could have performed" through the date last insured, including hand packager and laundry worker. R. 17-18. Accordingly, the ALJ found that Chambers "was not under a disability, as defined in the Social Security Act," from the alleged disability onset date[1] through the date last insured. R. 18.

---

[1] In section 11, the ALJ references October 6, 2005, as the alleged onset date. R. 18. This statement refers to the original alleged onset date, *see* R. 10, rather than the amended onset date, *see* R. 10, 345. The ALJ recognized that Chambers amended his alleged onset date at multiple points in her decision. R. 10, 15. Thus, the court believes that the reference to October 6, 2005, is a scrivener's error, and that the ALJ properly considered Chambers' disability status beginning at the amended alleged onset date.

6

V.

Chambers attacks the ALJ's decision on procedural and substantive grounds. The court will first consider Chambers' procedural claims regarding res judicata and ineffective assistance of counsel in Section A before turning to his contention that the ALJ did not base her decision on substantial evidence in Section B.

A.

Chambers lodges two procedural assaults on the legitimacy of the ALJ's opinion: first, that the ALJ improperly applied res judicata in her refusal to consider Chambers' disability status prior to April 24, 2010;[2] and second, that the ALJ's decision is invalid due to Chambers' counsel's ineffective representation during the administrative proceedings. Both contentions are unavailing.

1.

The record does not support a finding that the ALJ applied administrative res judicata in addressing Chambers' claim. To be sure, another ALJ previously determined that Chambers was not disabled for the period prior to April 24, 2010, and Chambers did not appeal that decision. R. 47. During the hearing on July 17, 2018, the ALJ and Chambers' counsel determined that administrative res judicata bars reconsideration of that decision, with Chambers' counsel stating that Chambers

---

[2] Administrative res judicata applies when the agency has "made a previous determination or decision . . . on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1).

would more than likely only be eligible for benefits after April 24, 2010. *Id.* Following this hearing, Chambers amended his alleged onset date to April 24, 2010. R. 47, 345, 347.

Chambers argues that the ALJ improperly used the principle of res judicata to bar a portion of his claim and narrow the relevant time period to the 20-month period between April 24, 2010 and December 31, 2011. As Chambers puts it, his "ability to prove . . . that [he] was disabled was severely damaged due to the narrow allowance of evidence." Doc. 8 at 1. Chambers contends that the ALJ should have considered medical records from prior to April 24, 2010, and that those earlier medical records establish he became disabled prior to the date last insured. *Id.* at 2.

Chambers' argument mischaracterizes the ALJ's actions. Chambers, through his counsel, affirmatively amended his alleged disability onset date to April 24, 2010, conceding that the ALJ could not consider his disability status prior to that date. R. 10, 47, 345. Thus, the ALJ did not rely on the principle of res judicata when limiting the relevant period, but instead relied on Chambers' amended onset date to properly limit her analysis to that period. R. 10-18.

Furthermore, the ALJ considered the medical evidence from outside the relevant period in her decision. A review of the ALJ's decision shows that the ALJ referenced medical records from 2005 through 2009, as well as records from as late as 2017, and used them to gain an understanding of Chambers' status during the

relevant period. *See* R. 13. The ALJ discussed how Chambers' records from 2005 through 2009, while showing severe mental distress at the beginning of the period, indicate that Chambers' primary concern in the later years was medication refills, implying that Chambers' mental state had improved between 2005 and the relevant time period. *Id.* The ALJ also examined a record from September 20, 2017, showing a diagnosis of bipolar disorder, and concluded that the diagnosis does not provide evidence of a disability during the relevant time period. *Id.*

To close, contrary to Chambers' contention, the ALJ did not rely on administrative res judicata and relied instead on Chambers' amended onset date. Moreover, the ALJ correctly used medical records from outside the relevant time period in an attempt to discern Chambers' disabled status during the relevant period.

**2.**

Next, Chambers argues that his counsel during the administrative proceedings provided "substandard" representation and that he would have achieved better results with an adequate attorney. Doc. 8 at 4. Chambers is correct that his counsel seemed ill-prepared during the proceedings. During the first hearing, counsel presented such a "disjointed" case that a supplemental hearing was required for Chambers to present additional information. R. 61. And, at the subsequent hearing, a different attorney appeared to represent Chambers due to a conflict in the original attorney's schedule. R. 67. Chambers asserts that it was clear to him that this fill-in

counsel lacked familiarity with the case and the medical record, and that his lack of effective counsel played a role in the ALJ's adverse decision. Doc. 8 at 4-5. Unfortunately, notwithstanding Chambers' valid contentions about his counsel's unpreparedness, "[t]he Supreme Court has never recognized a constitutional right to counsel in Social Security proceedings." *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992). Thus, the claim fails as a matter of law.

**B.**

Chambers also contends that substantial evidence does not support the ALJ's decision, alleging that "[t]he complete medical record does in fact show clear and lasting disabling status." Doc. 8 at 2. The burden is on the claimant to demonstrate his inability to work during the relevant time period. *See, e.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a) and 20 C.F.R. § 616.912(c)). An ALJ's decision is not based on substantial evidence if the ALJ selectively relies on only certain aspects of the record, *see McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986), or if her findings are tainted by severe mischaracterizations of the record, *see Webster v. Barnhart*, 343 F. Supp. 2d 1085, 1093-94 (N.D. Ala. 2004). Instead, the ALJ's "review must take into account and evaluate the record as a whole." *McCruter*, 791 F.2d at 1548 (citations omitted).

The ALJ primarily based her RFC determination on the few medical records available from the relevant period. R. 15-17. The ALJ found that while Chambers

was suffering from severe impairments, "[Chambers'] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." R. 16. To support this finding, the ALJ noted that between May 2010 and November 2011, Chambers had only five documented office visits. *Id.* And, using these available records, the ALJ then made enough specific references to the medical record to support her finding.

The substantial evidence supports the ALJ's finding. To begin, what little information the ALJ had from the relevant period does not clearly indicate that Chambers was suffering from a disability, as defined by the Act. When determining the severity of Chambers' impairments at Step Three, the ALJ noted that mental health practitioners found Chambers had a global assessment of functioning score of 58 on December 21, 2010 and November 20, 2011, indicating "moderate difficulty in social, occupational, or school functioning." R. 14, 345-46, 380, 388. The ALJ determined that these consistent scores weighed in favor of finding no more than moderate limitation of mental functioning during the relevant period. *Id.*

Furthermore, the ALJ pointed to treatment notes from May 13, 2010, indicating that Chambers' ability to interact with others was only moderately limited. R. 14, 760. Indeed, the referenced medical record does not demonstrate any difficulty in Chambers' personal relationships with his "supportive" fiancée or three-

year-old son. R. 760. The ALJ noted that Chambers reported feelings of anxiety or anger when others looked at him. R. 14, 760. However, the ALJ did not consider this anxiety a serious obstacle to interacting with others given Chambers' ability to develop good relationships with his family as documented in the same medical record. *Id.* The ALJ also discussed VA treatment notes from December 21, 2010, reflecting that Chambers identified playing computer games as a hobby and reported losing interest in hobbies quickly. R. 14, 729. The ALJ concluded that since Chambers was capable of taking part in activities requiring "good concentration," such as computer games, his ability to concentrate, persist, or maintain pace was only mildly limited. R. 14. Finally, the ALJ relied on the report of Robert Estock, M.D., an agency reviewing psychological expert, who reviewed the record and determined that there was a lack of evidence regarding Chambers' impairments prior to the date last insured. R. 110.

Following this assessment of the medical evidence, the ALJ concluded that none of the few relevant medical records demonstrate that Chambers was unable to perform a modified range of medium work during the relevant time period.[3] R. 15. While Chambers obviously disagrees with the ALJ, all of this evidence is adequate

---

[3] Chambers asserts that the ALJ "agree[d]" that he was disabled by stating during the hearing on October 25, 2018, that she did not "think there is a problem that he's disabled now." R. 71. The relevant time period in this case is, however, the 20-month period between April 24, 2010 and December 31, 2011. Whether Chambers was disabled at the time of the hearings in 2018 is of no consequence to the determination before the ALJ.

to support the ALJ's determination of Chambers' RFC. In reviewing the ALJ's decision, the district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "'reasonable and supported by substantial evidence.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). Therefore, because the substantial evidence supports the ALJ's decision, there is no reversible error.

As his final contention of alleged error, Chambers cites the ALJ's failure to discuss Chambers' VA disability rating. Doc. 8 at 2. The SSA's new rule, which applies to all claims filed on or after March 27, 2017, states that the determinations or decisions made by other governmental agencies will not be considered in an ALJ's determination of disability. 20 C.F.R. § 404.1504. The SSA cites multiple reasons for making these exclusions, including that other agencies utilize different standards for their disability decisions and that the purposes of the decisions "differ significantly." 82 Fed. Reg. 5,848. Based on this rule, as long as the ALJ considered the same evidence the VA utilized, she had no obligation to consider Chambers' VA disability rating. Therefore, because the ALJ did consider the medical records available to her from the relevant time period, including the VA treatment notes, R.

14, the ALJ correctly declined to consider the VA's disability rating in her determination of Chambers' RFC.[4]

## VI.

Based on the foregoing, substantial evidence supports the ALJ's determination that Chambers was not disabled during the relevant period. Therefore, the Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be issued.

**DONE** the 31st day of July, 2020.

*[signature]*

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[4] Chambers also argues that the difficulties inherent in receiving treatment from the VA's mental health services, such as short appointment times and seeing a different medical professional each visit, make the VA's record an inaccurate assessment of Chambers' actual impairments at the relevant time. Doc. 8 at 3-4. The systemic issues regarding mental health care in this country are serious, and studies have shown that mental health services for veterans are severely lacking. *See, e.g.*, *VA Provides Mental Health Care to Veterans of Recent Iraq and Afghanistan Wars of Comparable or Superior Quality to Other Providers, Yet Substantial Unmet Need Remains*, NAT'L ACAD. SCI., ENG'G, & MED. (Jan. 31, 2018), https://www.nationalacademies.org/news/2018/01/va-provides-mental-health-care-to-veterans-of-recent-iraq-and-afghanistan-wars-of-comparable-or-superior-quality-to-other-providers-yet-substantial-unmet-need-remains. However, the court is bound by the law and cannot resolve these systemic issues here. Instead, the court's review is limited to the available record. Based on this record, the ALJ properly considered the available medical records.